IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HECTOR O. VARGAS-REYES<br><br>Defendant. | CRIMINAL NO. 16-696 (PAD) |

MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

Before the court is the government's request to revoke the U.S. Magistrate Judge's release order, and that defendant be detained pending trial (Docket No. 12). For the reasons explained below, defendant shall be detained without bail pending trial.

## I.  BACKGROUND

On Thursday, November 3, 2016, the grand jury returned an indictment charging defendant, Héctor O. Vargas-Reyes, with two counts of Attempted Production of Child Pornography in violation of 18 U.S.C. §§ 2251(a) and (e), and one count of Attempted Possession of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Docket No. 1). On Friday, November 18, 2016, U.S. Magistrate Judge Silvia Carreño-Coll presided over the arraignment detention hearing, during which the United States moved for defendant's detention (Docket No. 9). At the conclusion of the hearing, the Magistrate Judge set the following conditions of release: unsecured bond in the amount of $10,000.00; home incarceration with electronic monitoring; submission to a mental health evaluation; other standard conditions; and ordered defendant's father to be qualified as a third party custodian by the Probation Office. Id.

The same day, the Government filed a motion "Requesting an Immediate Stay of the Magistrate Judge's Order Releasing the Defendant on Bail" (Docket No. 11), and an "Urgent Motion for Revocation of the Magistrate Judge's Order Releasing the Defendant on Bail and Request for a *De Novo* Hearing, If Necessary" (Docket No. 12). In turn, the defendant opposed the Government's request that bail be revoked, and in the alternative, requested a *de novo* hearing (Docket No. 13). On Monday, November 21, 2016, the court granted the Government's request for stay, scheduling a *de novo* bail hearing for Wednesday, November 23, 2016 (Docket No. 14).

Because defendant had been released on November 18 prior to the request to stay the Magistrate Judge's Order, the Government requested that defendant be arrested or that defense counsel be held responsible for ensuring defendant's appearance (Docket No. 15). The defendant opposed the government's motion, asking that summons be issued instead (Docket No. 16). The court granted in part the Government's motion, ordering defense counsel to notify defendant of the date and time of the de novo hearing and to file an informative motion certifying compliance with the Order (Docket No. 18). Similarly, it granted defendant's motion for issuance of summons, ordering that summons be accordingly served (Docket No. 19).

During the hearing, the Government proffered and presented evidence, defendant presented evidence, and the parties argued their respective positions. Based on the totality of information received, the court ordered that defendant be detained pending further record review (Docket No. 23; Transcript at p. 63). The court has carefully reviewed the record in its entirety and listened to the recording of the arraignment detention hearing held before U.S. Magistrate Judge Carreño-Coll in this case and before U.S. Magistrate Judge Marcos López in Criminal Case No. 13-221 (CCC).[1]

---

[1] Defendant was originally charged on April 17, 2013 in Criminal No. 13-221 (CCC), after the Grand Jury returned a three-count

## II.     STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence contrary to the facts presumed. Id. Rebuttal evidence does not burst or destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

---

Indictment charging defendant with two counts of production-attempted production of child pornography and one count of possession-attempted possession of child pornography (Transcript at p. 6). U.S. Magistrate Judge López ordered him detained without bail. Id. at p. 8. The parties ultimately reached the point of filing a motion for change of plea and appeared at the change of plea hearing, but the defendant decided to exercise his right to go to trial instead of pleading guilty. Id. at pp. 8-9. Shortly thereafter, defendant filed a speedy trial violation motion, which the United States joined. Id. at p. 9. On October 31, 2016, the sister court dismissed the case without prejudice. Id. The next day, the United States presented a new indictment to the Grand Jury. Id. There was a return by the Grand Jury, resulting in the present case. Id.

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932. Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O' Brien, 895 F.2d at 813.

### III.   DISCUSSION

**A.  Presumption**

The parties agree that the statutory presumption applies here. See, Transcript at p. 2 (Government's position) and p. 34 (Defendant's position). As previously mentioned, the presumption is triggered in connection with offenses listed in 18 U.S.C. § 3142(e). These include offenses involving a minor victim under 18 U.S.C. § 2251. See, 18 U.S.C. § 3142 (e)(3)(E) Defendant has been charged with attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e), and attempted possession of child pornography in violation of 2252(a)(4)(B) and 2252b(2).

Defendant alleges his release would pose no danger to the community safety or risk of flight (Docket No. 13 at p. 3). He asserts he has no history of violence; has lived his whole life in Puerto Rico; has no ties with any other district; was detained three and a half years in jail awaiting trial for the same offense in Criminal No. 13-221 (CCC), which is deterrence enough to avoid any more trouble; and with home incarceration and electronic monitoring, the probation officer would know immediately if he leaves the premises such that if merited, bail would be revoked. Id. at pp. 3-4. Given that his burden is one of production and it is not heavy, the court assumes the presumption has been rebutted, and by extension, that it retains evidentiary weight to be evaluated along with the criteria set forth in 18 U.S.C. § 3142(g), discussed below.

### B. Detention Factors

#### 1. Nature and Circumstances of Offenses

Defendant concedes that, if true, the nature and circumstances of the crime charged favor the Government (Docket No. 13 at p. 3). He is charged in a three-count indictment for having attempted over a period of six months to produce and possess child pornography involving his 16-year old stepdaughter. He photographed his stepdaughter naked in the bathroom and bedroom of her home; places where, as the Government states, "people are expected to feel safe from prying eyes" (Docket No. 12 at p. 11). Further, from the Government's proffer, defendant stalked the minor over a period of six months, beginning as early as September 2012 and stopping in March 2013 when he was caught (Transcript at p. 16).

Defendant has been charged with crimes of violence under Section 3142(f)(1)(A). See, Section 3156(a)(4)(C)(defining "crime of violence" to cover any felony violation of chapter 110 of Title 18, including 18 U.S.C. § 2251); United States v. Burdette, 813 F.Supp.2d 1, 4 (D.D.C. 2011)(identifying 18 U.S.C. § 2251 violation as crime of violence); United States v. Dávila-Sánchez, 2006 WL 1236776, *1 (D.P.R. May 5, 2006)(same with respect to 18 U.S.C. § 2252(a)(4)(B)). If convicted, he faces a mandatory minimum term of incarceration of 15 years and a statutory maximum term of incarceration of sixty years based on a conviction for both counts of attempted production of child pornography (30 years per count of attempted production), which can be stacked for sentencing purposes. See, Transcript at pp. 13-14 (analyzing statutory exposure).[2] The offenses charged, the statutory sentencing exposure, and their underlying circumstances favor detention.

---

[2] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. Moss, 887 F.2d at 336.

2. Weight of Evidence

The case started with a complaint from defendant's 16-year old stepdaughter. On approximately March 28, 2013, she was showering in her bathroom in her home (Transcript at p. 4). On top of the bathroom door there was what is known as a transom window. Id. Upon getting out of the shower and toweling herself off, the minor noticed something strange in the window. She stood there frozen for a little while, not knowing what it was. Id. After a couple of minutes she did not see it again. So she went back to her bedroom, got dressed, and did not think of it again. Id. Two days later, however, she was showering in the same bathroom. She saw something in the window, and this time, recognized it as a cell phone belonging to her stepfather (the defendant). Id. at p. 5.

The minor was shocked and frightened, left the bathroom, and walked down the hallway to her bedroom at the end of the hall. Id. The bedroom door also has a transom window at the top. Id. The minor said she started to get dressed, and as she was standing somewhere underneath of a sconce lamp on the wall, she again saw the camera, which she identified as belonging to her stepfather, the defendant. Id. She was in the middle of getting dressed, petrified by what she saw, and moved to a location right behind the door, directly under where she saw the camera, locked the door in the bedroom, and called her mother crying. Id.

The Government proffered the minor identified or was able to identify the cell phone as belonging to the defendant, because he had frequently shown her jokes using that same cell phone. Id. at p. 5. The angle of each of the photos demonstrates they were taken through the transom windows above the bathroom and the bedroom of the minor's home. They are as the minor stated. According to the Government's proffer, review of the metadata associated with the images

recovered through the digital forensic examination suggests the defendant had been attempting to capture images of his stepdaughter in the bathroom and bedroom for over six months.

Defendant argues that the "so called evidence is not child pornography" (Docket No. 13 at p. 3). He states that none of the pictures focused on the pubic or genital area, and they are not sexually suggestive (Transcript at p. 43). From his perspective, the pictures do not depict the minor in an unnatural pose or inappropriate attire considering her age, and do not show sexual coyness or willing to do anything except daily activities in her room and bathroom. Id. at pp. 43-44. Along the same line, he states the pictures do not elicit any responses from the viewer except maybe shame to have to see the pictures. Id. at p. 44.

As for the pictures, Picture Three (3) shows the minor toweling herself off in the shower.[3] Picture Number Four (4) shows the naked buttocks of the minor in the lower right hand corner. Picture Number Seven (7) depicts the body and head of the minor sitting on the toilet. Picture Number Eight (8) shows the minor naked and sitting on the toilet. Picture Number Twelve (12) shows the minor stepping up from the toilet to get into the shower. Picture Number Ten (10) shows the minor bent over, seemingly naked from the waist up.

The pictures show images of a minor in various stages of disrobe. So presented, they are arguably intended to elicit a sexual response in the defendant and in other like-minded individuals. As the First Circuit has pointed out, it is up to the jury to determine whether the images forming a basis for an indictment depict lascivious exhibition as statutorily defined. See, United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006). For purposes of bail determination, there is no evidence inconsistent with a finding of guilt. See, United States v. Gray, 529 F.Supp.2d 177, 181 (D.Mass.

---

[3] The pictures were submitted under Government's Exhibit 5.

2007)(so noting in rejecting claim that weight of evidence was weak).[4]  In consequence, the weight of evidence favors detention.

### 3. History and Characteristics of the Defendant

Defendant is thirty-seven years of age (Pretrial Services Report at p. 1).  He has a Bachelor's Degree in Criminal Justice from Interamerican University in Arecibo, Puerto Rico and a Master's Degree in Public Affairs from Turabo University in Gurabo, Puerto Rico.  Id. at p. 2. From 2000 until 2013, he was employed in the Witness Protection Division of the Puerto Rico Department of Justice,[5] and for four years was a part-time reservist with the Puerto Rico National Guard (Transcript at pp. 50-51).  From 1978 until 2006, he resided with his parents and siblings in Camuy, Puerto Rico; from 2006 until 2013 he resided with his former wife in Sabana Grande, Puerto Rico, and since 2013 has been incarcerated under federal custody (Pretrial Services Report at p. 1).  He has no prior arrests (Transcript at p. 35; Pretrial Services Report at p. 3).  No complaints have been filed against him.  Id.  And there is no history of reported alcohol use or substance abuse (Transcript at p. 35).  These elements favor release.

### 4. The Danger Posed to the Community by Defendant's Release

The Government proffered and presented a letter from the minor.  In the letter, the minor expresses fear that she will not be safe if the defendant goes out onto the street, because he would finish what he began (Transcript at p. 21).  She states she is not living with her mother because she

---

[4] Compare that situation with the one evaluated in United States v. Torres-Rosario, 600 F.Supp.2d 327, 334 (D.P.R. 2009), where the only witness against the defendant failed to identify him in court during the bail hearing even though he was the only person in the courtroom dressed in an inmate jumpsuit and was sitting at the defense counsel table next to his attorneys.

[5] The Pretrial Services Report states defendant was a police officer with the Puerto Rico Police.  See, Pretrial Services Report at p. 2.  Defendant's counsel stated that defendant worked for the Puerto Rico Department of Justice rather than for the Puerto Rico Police.  See, Transcript at p. 50.  The Government pointed out that defendant was a police officer assigned to the Special Investigations Bureau for the Puerto Rico Police Department, also assigned on detail as the escort for the then Attorney General.  Id. at p. 3.

is attending college, and has no one to defend her. Id. Defendant objected the letter on reliability grounds, and the Government subscribed to its trustworthiness. Id. at p. 21-26. The circumstances underlying the letter's preparation persuade the court of its trustworthiness for bail evaluation purposes. Id. (describing circumstances). On this record, the purported victim already stands to suffer irreparable harm because of defendant's conduct.

In turn, defendant presented as exhibits, letters from people who have known him for years (Transcript at p. 47). The letters are from Héctor Vargas Nieves (defendant's father)(Docket No. 35-1 at p. 1); Yanira Santiago, id. at p. 2; an unidentified source, id. at p. 3; Ada N. Pagán Rosa, id. at p. 4; and Denise González Llera, id. at p. 5. Among other things, the letters state that defendant was always taught to comply with his responsibilities, id. at p. 1; he is straightforward in his behavior, and would not represent any danger to the community nor pose a risk of flight, id. at p. 2; he is incapable of hurting anyone, id. at p. 3; he always has shown himself to be disciplined, id. at p. 4; and he has always been able to meet goals he sets, id. at p. 5. The letters do not reflect any understanding of what defendant has been charged with. In that sense, they conflict directly with the evidence proffered and presented.

If the jury were to accept the Government's version of the facts, defendant would not have complied with his responsibilities, would have shown lack of discipline, and would have hurt (at least) a minor (his stepdaughter) and the minor's mother (defendant's former wife). For the same reason, the picture that those letters portray supports detention in the context of this case. Given the evidence presented, defendant's release would pose a significant danger to children in the community. See, Burdette, 813 F.Supp.2d at 4 (so finding in case of a defendant charged with attempted production of child pornography); Dávila-Sánchez, 2006 WL 1236776, *1-2 (concluding that if released, defendant accused of possession of child pornography and production

of such material would pose a grave danger to children, including the victim in the case). Like in Dávila-Sánchez, defendant's pretrial detention will assure that prospectively no other minor is harmed. Id.

5. Interaction of Factors

The elements related to a defendant's history and characteristics are ostensibly targeted at establishing the defendant's likelihood to flee. Nonetheless, the language introducing the list of factors to be considered by a court when reviewing a detention order refers both to reasonably assuring appearance and safety. So there is an inherent ambiguity as to whether each of the factors listed is declared to be relevant to both appearance and safety. See, Torres-Rosario, 600 F.Supp.2d at 334 (so recognizing).

In the same way, while certain factors – such as the nature of the crime and weight of the evidence – may more naturally focus attention on dangerousness rather than appearance, the seriousness of the charge and the strength of the evidence can create a strong incentive for a defendant's flight. Id. That is the situation here, as defendant faces a minimum of fifteen years and up to thirty years imprisonment, the prospect of which could surely create a motive to flee.

Defendant argues that he voluntarily complied with this obligation to appear at the *de novo* detention hearing; that the family is an important element in making a determination of compliance, and one of the conditions the U.S. Magistrate Judge set was home incarceration, with the family unit as third party custodian, and that such unit would serve as a guarantee that no other party will be hurt while defendant is under release (Transcript at p. 46). Additionally, he states his father is a retired state IRS agent, was in the National Guard for 22 years, is a veteran of the Vietnam and Gulf Wars (id. at 36) and will make sure the son complies with everything the court

orders him to.  Id. at pp. 37-38.  Furthermore, he asserts that even though the bail that was signed was unsecured, he is willing to sign one secured by property.  Id. at p. 48.

The charges for which defendant is charged involve crimes of violence.  Defendant has traveled outside of Puerto Rico.  He was in Kentucky and Virginia when he did his basic training in the military in 2009 or 2010 (Transcript at p. 51), and was in the Dominican Republic five years ago.  Id. at p. 52.  His primary language is Spanish but he is fluent in English as a second language (Pretrial Services Report at p. 2).  Although he possesses a U.S. Passport, the location of the Passport is unknown.  Id.

Defendant was a successful law enforcement officer and military serviceman who dealt with victims of crime. But he was willing to risk it all to take pictures of his stepdaughter.  He knew the law.  Nevertheless, at some point after federal law enforcement authorities notified local authorities that defendant was under investigation, but prior to the execution of a federal search warrant, defendant disposed of a computed he had.  See, Transcript at p. 8 and Docket No. 12 at p. 2 of Criminal No. 13-221 (CCC).  The court has no reason to doubt the integrity of defendant's father.  However, at the time of the events the minor's mother (defendant's former wife) was a Puerto Rico Police Officer (Docket No. 65 of Criminal No. 13-221 (CCC) at p. 1).  And that did not stop defendant from perpetrating the acts for which he has been charged.  These factors neutralize the aspects of defendant's personal history and characteristics favoring release, to the point of tilting the balance toward detention.  That three years have elapsed since defendant was first arrested do not sufficiently mitigate these problems.

## IV.   CONCLUSION

Having carefully considered all the evidence as well as the available range of release conditions, the court concludes the government has shown, by preponderance of the evidence, that

United States of America v. Héctor O. Vargas-Reyes
Criminal No. 16-696 (PAD)
Memorandum and Order
Page 12

no condition or combination of conditions will reasonably ensure defendant's appearance in court; and by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released.

The nature and circumstances of the offenses charged, including potential penalty; the weight of the evidence; and danger to the community outbalance other elements in defendant's personal and history and characteristics arguably supporting release even under the conditions that the U.S. Magistrate Judge set at Docket Nos. 9 and 23.  The evidentiary weight of the rebutted presumption (assuming it was so rebutted), lends added support for this conclusion.  Therefore, the defendant shall be detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of December 2016.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge